UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ANDREW AND LAURA TIMM,<br><br>        Plaintiff,<br><br>v.<br><br>STEARNS BANK N.A.; EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC; AND TRANS UNION LLC,<br><br>        Defendants. | Case No.: 0:20-cv-2375<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 USC §1681** *et seq.* |

Plaintiffs Andrew and Laura Timm ("Plaintiffs"), through their attorneys, allege the following against Defendants Stearns Bank N.A. ("Stearns"), Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc, ("Experian") and Trans Union LLC ("Trans Union"):

## INTRODUCTION

1. Plaintiffs' Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendants Equifax, Experian, and TransUnion, each a consumer reporting agency, for reporting inaccurate information on Plaintiff's credit report.

2. Plaintiffs' Complaint also alleges violations of the FCRA, against Defendant Stearns Bank for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Defendants Equifax and Trans Union.

## JURISDICTION AND VENUE

3. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

1

4. Venue in this District is proper pursuant to 28 U.S.C. 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

5. Defendants transact business here; as such, personal jurisdiction is established.

## PARTIES

6. Plaintiffs are natural persons residing in the city of Hinckley in Pine County, MN.

7. Plaintiffs are *consumers* as defined by the FCRA, 15 U.S.C. §1681a(c).

8. Defendant Stearns is a financial institution engaged in the business of giving credit and collecting debt. Stearns is also a *furnisher*, as defined in 15 U.S.C. § 1681s-2. Upon information and belief, Stearns is regularly engaged in the business of furnishing credit information to the credit reporting agencies. Stearns' principal place of business is located at 4191 2nd St. S, Saint Cloud, MN 56301.

9. Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309.

10. Defendant Experian is a credit reporting agency, as defined in 15 U.S.C. § 1681a(f)). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

11. Defendant Trans Union is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)). On information and belief, Trans Union is regularly engaged in the business of

assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 USC 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661.

12. Upon information and belief, Defendant Equifax, Experian, and Trans Union, (referenced together as "credit reporting agencies" or "CRAs") disburse consumer reports to third parties under contract for monetary compensation.

13. At all relevant times, Defendants' acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

14. Any violation by Defendants was not in good faith, was knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation

## FACTUAL ALLEGATIONS

15. Defendants Equifax, Experian, and Trans Union report consumer information about Plaintiffs and other consumers through the sale of consumer reports (credit reports).

16. Defendants Equifax, Experian, and Trans Union credit reports generally contain the following information: (i) *Header/Identifying Information*: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) *Tradeline Information*: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) *Public Record Information*: this section typically includes public record information, such as bankruptcy filings; and (iv) *Credit Inquiries*: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit

cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

17. Defendants Equifax, Experian, and Trans Union gain access to consumer information from various sources, including furnishers who provide consumer information to Defendants, and information Defendants independently source themselves or through third party providers/vendors or repositories, including computerized reporting services like PACER.

18. The information reported by Defendants Equifax, Experian, and Trans Union contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendants' consumer credit reports.

19. The majority of financial services lenders (e.g., banks, creditors, lender) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

20. These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

21. FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

22. Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed.

23. The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

24. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, once a delinquent account has been remedied the longer the

account stays current the more a consumer's FICO Score should increase.

25. Defendants Equifax, Experian, and TransUnion obtained and reported Plaintiffs' consumer bankruptcy information in both the Public Records section of their consumer credit report, as well as the individuals account tradelines.

26. Defendants had notice of Plaintiff's bankruptcy through their independent collection of consumer information as well as from information provided to Defendants by tradeline furnishers. Defendants reported Plaintiff's bankruptcy filing and/or discharge in the public record section of their credit reports, as well as individual account tradelines.

27. Defendants Equifax, Experian, and TransUnion are well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

28. Defendants are also aware of the effect of a reaffirmation of debt, which excludes the debt from the bankruptcy discharge.

29. Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Defendants obtain the bankruptcy case information, as well as from information provided to Defendant from furnishers of account/tradeline information.

30. Rather than following reasonable procedures to assure maximum possible accuracy, Defendants report information regarding pre-bankruptcy debts even if that information ignores or contradicts information already known by Defendants, information provided by furnishers of account/tradeline information, and/or information contained in public court records that Defendants have obtained through its independent efforts, or could easily obtain through

5

reasonably available public records.

31. Defendants are on continued notice of its inadequate post-bankruptcy reporting procedures, including pertaining to account and payment statuses, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a consumer bankruptcy.

32. In or around July 2008, Plaintiffs obtained a loan with Stearns Bank N.A. (the "Account"), ending in 5862.

33. On or about August 27, 2019, Plaintiffs filed for a voluntary bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Minnesota (Duluth), petition number 19-50682.

34. On or about November 7, 2019, Plaintiffs reaffirmed Plaintiffs' obligations under the Account, whereby Plaintiffs remained personally liable/responsible for continued payment on the Account. The Account was therefore not included in Plaintiffs' bankruptcy discharge.

35. Plaintiff received a discharge in bankruptcy court on or about January 27, 2020.

36. Plaintiffs filed their bankruptcy and reaffirmed the aforementioned debt with Stearns for the purpose of rebuilding and improving their credit. They were eager to obtain a "fresh start".

37. Sometime after Plaintiffs' bankruptcy discharge, Plaintiffs obtained their Experian, Equifax, and Trans Union consumer credit reports to ensure that their credit account tradelines and bankruptcy were being reported accurately.

38. Plaintiffs learned that the CRAs were inaccurately reporting Plaintiffs' reaffirmed Account as having been included in Plaintiffs' bankruptcy, and subject to bankruptcy coding that conveys to creditors/lenders that the account was discharged or non-current/non-paid even though

Plaintiff continued to make ongoing payments on the Account.

39. Plaintiffs have continued to make timely payments on the Account and are current on their payments to date.

40. Plaintiffs reaffirmed the Account during bankruptcy, remaining personally liable for the obligation and the Account (debt) was indisputably not discharged. Plaintiffs did this to maintain some of their credit history and to rebuild/re-establish credit through timely monthly payments on the reaffirmed Account

41. However, when Plaintiffs pulled their credit reports, Plaintiffs discovered that Defendants Equifax and TransUnion were reporting the Account in bankruptcy and were not reporting the Account's positive payment history despite reaffirmation of the debt.

42. Defendant Experian was reporting the Account's positive payment history, but the status was reported as "Petition for Chapter 7 Bankruptcy".

43. Defendants Equifax, Experian, and Trans Union's reporting was therefore inaccurate as both patently false and materially misleading since the Account was reaffirmed and not discharged by Plaintiff's bankruptcy and Plaintiff continued to make timely monthly payments on the Account. As reported, Defendants fail to report the correct payment history and ongoing payments, and/or report false payment statuses that indicate that the Account was included in and/or discharged in bankruptcy, instead of its true status of reaffirmed.

44. Plaintiffs' positive payment history on the Account is important to Plaintiffs' efforts to reestablish their credit and maintain their previous positive credit history.

45. On or about July 8, 2020, Plaintiffs sent letters to Experian, Equifax, and Trans Union disputing their inaccurate reporting of the Account.

//

46. The letters specifically advised that Plaintiffs did not include the Account in their bankruptcy, remained personally obligated for the Account, and continued to make regular payments on the Account.

47. Upon information and belief, Experian, Equifax, and Trans Union received Plaintiff's dispute letters.

48. Upon information and belief, Experian, Equifax, and Trans Union forwarded Plaintiff's disputes to Stearns within 5 business days of receipt.

49. On or about July 21, 2020, Equifax responded to Plaintiff Laura Timm's dispute letter. Equifax's response indicated that it had completed an investigation and updated the tradeline, but it would continue to report the Account as "Account included in bankruptcy."

50. Upon information and belief, Equifax did not investigate Plaintiff's dispute and merely forwarded an automated dispute form to Stearns. Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and information known by Equifax through Plaintiff's reported payment history regarding the Account, Equifax merely parroted information furnished by Stearns despite awareness that the information was factually inaccurate and conflicted with information known by Equifax.

51. On or about July 23, 2020, TransUnion responded to Plaintiff's dispute letter. Trans Union's response indicated that it had completed an investigation and updated the tradeline, but it would continue to report the Account as "Account included in bankruptcy."

52. Upon information and belief, TransUnion did not investigate Plaintiffs' dispute and merely forwarded an automated dispute form to Stearns. Rather than perform an investigation based on Plaintiffs' dispute, reasonably available public records, and information known by TransUnion through Plaintiffs' reported payment history regarding the Account, TransUnion

8

merely parroted information furnished by Stearns despite awareness that the information was factually inaccurate and conflicted with information known by TransUnion.

53. On or about July 25, 2020, Equifax responded to Plaintiff Andrew Timm's dispute letter. Equifax's response indicated that it had completed an investigation and updated the tradeline, but it would continue to report the Account as "Account included in bankruptcy."

54. Upon information and belief, Equifax did not investigate Plaintiff's dispute and merely forwarded an automated dispute form to Stearns. Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and information known by Equifax through Plaintiff's reported payment history regarding on the Account, Equifax merely parroted information furnished by Stearns despite awareness that the information was factually inaccurate and conflicted with information known by Equifax.

55. On or about August 14, 2020, Experian responded to Plaintiffs' dispute letter. Experian updated the Account status to "Open" but removed the positive payment history for the months after the bankruptcy filing.

56. Upon information and belief, Experian did not investigate Plaintiffs' dispute. Rather than perform an investigation based on Plaintiffs' dispute, reasonably available public records, and information known by Experian through Plaintiffs' reported payment history regarding the Account, Experian reported an inaccurate payment history.

57. As a result of Defendants' conduct, Plaintiff has sustained actual damages including but not limited to, embarrassment, anguish, and emotional and mental pain.

58. Upon information and belief, had Defendants accurately reported the Account as a positive account with a positive payment history, Plaintiffs' credit scores would have been better than it was.

59. Defendants' conduct exacerbated Plaintiffs' frustration during the already stressful post-bankruptcy period by hindering their ability to rebuild their credit.

60. Defendants' conduct reduced Plaintiffs' access to credit by reporting materially misleading and patently false information on their consumer credit report.

61. Upon information and belief Plaintiffs applied for credit cards with multiple banks and were denied due to Defendants inaccurate reporting which was published to the banks in their review of Plaintiffs' application.

## COUNT I
### Defendants Experian, Equifax, and Trans Union
### (Violations of the FCRA, 15 U.S.C. § 1681 *et seq*)

62. Plaintiffs incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

63. The FCRA requires credit reporting agencies, like Defendants to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

64. Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and by also failing to report accurate information when placed on notice that the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by Defendants, reported to Defendants, or reasonably available to Defendants.

65. Defendants knew or should have known of their obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their

unreasonable procedures concerning the reporting of debts during and after bankruptcy.

66. Upon information and belief, Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties.

67. Upon information and belief, Defendants voluntarily conducted public records searches and obtained information about Plaintiffs' bankruptcy filing and events.

68. The diligence Defendants exercise in recording consumer bankruptcy filings is not replicated in Defendants' reporting of the effect of bankruptcy proceedings and orders upon certain accounts, including, the status of accounts that are reaffirmed, despite Defendants' knowledge thereof and the reported payment history by tradeline furnishers.

69. Consequently, Defendants routinely reports inaccurate, incomplete, outdated, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendants possesses information inconsistent with the reported information, and possesses information establishing that the reported information is in fact inaccurate.

70. Defendants therefore negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to Plaintiff.

71. Defendants' conduct violated the FCRA. Defendants' violations include but are not limited to, violations of 15 U.S.C. § 1681e(b) for failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

//

      i. Defendants reported Plaintiff's Account as included in bankruptcy when the Account was reaffirmed.

      ii. The inaccurate reporting of Plaintiff's information has caused Plaintiffs to suffer, stress, anxiety, headaches, frustration, and emotional and mental pain and anguish, a decreased credit score, and subjected Plaintiff to less favorable interest rates and credit terms.

      iii. Furthermore, Defendants received notice from Plaintiffs that the information being reported on his credit was inaccurate.

72. Further, the FCRA provides that if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, or it must delete the item from the file within thirty (30) days of receiving the consumer's dispute notice. 15 U.S.C. § 1681i(a)(2)(A).

73. The FCRA further requires the credit reporting agency, within 5 business days of receiving notice of the consumer's dispute, to provide notification of the dispute to the person who furnished the information in dispute and requires the credit reporting agency to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. §1681i(a)(2)(A). In conducting its reinvestigation of disputed information in a consumer report, the credit-reporting agency is required to "review and consider all relevant information submitted by the consumer."

74. Thus, in addition to violating the FCRA by failing to follow reasonable procedures, Defendants additionally violated the FCRA by failing to perform a reasonable reinvestigation of

the disputed Account even after Plaintiffs notified Defendants of the inaccurate information each reported in Plaintiff's credit file.

75. Defendants failed to conduct a reasonable reinvestigation of the inaccuracy that the Plaintiff disputed in violation of 15 U.S.C. § 1681i, by:

    i. Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

    ii. Failing to consider all relevant information while investigating Plaintiff's dispute.

    iii. Failing to include all relevant information when notifying Stearns of Plaintiff's dispute.

76. Defendants' acts, as described above, were done willfully and knowingly.

77. As a result of the foregoing violations of the FCRA, Defendants are liable to Plaintiff for actual damages, statutory damages, attorneys' fees and costs.

## COUNT II
### Defendant Stearns Bank N.A.
### (Violations of the FCRA, 15 U.S.C. § 1681s-2(b))

78. Plaintiffs incorporate by reference all the above paragraphs of this Complaint as though fully stated herein.

79. The FCRA requires a furnisher, such as Stearns, after receiving notice from a credit report agency that a consumer disputes information that is being reported by that furnisher to conduct an investigation with respect to the dispute information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

80. Sterns knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the

Federal Trade Commission, and in well-established case law. Stearns obtained or had available substantial written materials that apprised Stearns of its duties under the FCRA. Despite knowing these legal obligations, Stearns acted consciously in breaching its known duties and deprived Plaintiff of their rights under the FCRA.

81. On at least one occasion within the past two years, by example only and without limitations, Defendant violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiffs' disputes.

82. Plaintiffs notified Experian, Equifax, and Trans Union that the Account was being reported inaccurately. Thereafter, Experian, Equifax, and Trans Union notified Stearns that Plaintiffs were disputing the information they had furnished, and further forwarded Plaintiffs' dispute to Stearns

83. Stearns received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

84. Stearns continues to furnish inaccurate information about Plaintiff to all three consumer reporting agencies, even though Stearns possessed all relevant information about the Account and the inaccuracy that Plaintiff disputed.

85. The inaccurate Stearns account materially and adversely affects Plaintiff's credit standing.

86. Stearns violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

//

    i.    Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

    ii.    Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

    iii.    Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

    iv.    Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

    v.    Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

    vi.    Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

    vii.    Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

87. Stearns unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

88. Stearns is a direct and proximate cause, as well as substantial factors in causing damage and harm to Plaintiff.

//

89. Consequently, Stearns is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Andrew Kang respectfully requests judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendants violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

//
//
//
//
//
//
//

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Respectfully submitted this 20th day of November 2020,

> By: *s/Jenna Dakroub*
> Jenna Dakroub
> Bar Number: 385021
> *Attorneys for Plaintiff*
> *Andrew and Laura Timm*
> **Price Law Group**
> 8425 N. 85th Way
> Scottsdale, AZ 85258
> Telephone: (818) 600-5513
> Fax: (818) 600-5413
> E: jenna@pricelawgroup.com